|  |  |
|---|---|
| 1 | UNITED STATES DISTRICT COURT |
| 2 | DISTRICT OF NEVADA |

| | |
|---|---|
| JORGE TRUJILLO, | Case No. 2:20-cv-01643-GMN-VCF |
| Plaintiff | SCREENING ORDER |
| v. | |
| H. LANDSMAN et al., | |
| Defendants | |

Plaintiff, who is incarcerated in the custody of the Nevada Department of Corrections ("NDOC"), has submitted a civil rights complaint pursuant to 42 U.S.C. § 1983 and has filed an application to proceed *in forma pauperis*, a motion for appointment of counsel, and a motion requesting court records. (ECF Nos. 1, 1-1, 1-3, 3). The matter of the filing fee will be temporarily deferred. The Court now screens Plaintiff's civil rights complaint pursuant to 28 U.S.C. § 1915A and addresses the motions.

**I.      SCREENING STANDARD**

Federal courts must conduct a preliminary screening in any case in which an incarcerated person seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). In its review, the court must identify any cognizable claims and dismiss any claims that are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See id.* § 1915A(b)(1), (2). *Pro se* pleadings, however, must be liberally construed. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim under 42 U.S.C. § 1983, a plaintiff must allege two essential elements: (1) the violation of a right secured by the Constitution or laws of the United States, and (2) that the alleged violation was committed by a person acting under color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

In addition to the screening requirements under § 1915A, pursuant to the Prison Litigation Reform Act ("PLRA"), a federal court must dismiss an incarcerated person's

claim if "the allegation of poverty is untrue" or if the action "is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2). Dismissal of a complaint for failure to state a claim upon which relief can be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and the court applies the same standard under § 1915 when reviewing the adequacy of a complaint or an amended complaint. When a court dismisses a complaint under § 1915(e), the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies could not be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). Dismissal for failure to state a claim is proper only if it is clear that the plaintiff cannot prove any set of facts in support of the claim that would entitle him or her to relief. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir. 1999). In making this determination, the court takes as true all allegations of material fact stated in the complaint, and the court construes them in the light most favorable to the plaintiff. *See Warshaw v. Xoma Corp.*, 74 F.3d 955, 957 (9th Cir. 1996). Allegations of a *pro se* complainant are held to less stringent standards than formal pleadings drafted by lawyers. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980). While the standard under Rule 12(b)(6) does not require detailed factual allegations, a plaintiff must provide more than mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A formulaic recitation of the elements of a cause of action is insufficient. *Id.*

Additionally, a reviewing court should "begin by identifying pleadings [allegations] that, because they are no more than mere conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "While legal conclusions can provide the framework of a complaint, they must be supported with factual allegations." *Id.* "When there are well-pleaded factual allegations, a court should assume their veracity and then

determine whether they plausibly give rise to an entitlement to relief." *Id.* "Determining whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

Finally, all or part of a complaint filed by an incarcerated person may therefore be dismissed *sua sponte* if that person's claims lack an arguable basis either in law or in fact. This includes claims based on legal conclusions that are untenable (e.g., claims against defendants who are immune from suit or claims of infringement of a legal interest which clearly does not exist), as well as claims based on fanciful factual allegations (e.g., fantastic or delusional scenarios). *See Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989); *see also McKeever v. Block*, 932 F.2d 795, 798 (9th Cir. 1991).

## II. SCREENING OF COMPLAINT[1]

In the complaint, Plaintiff sues multiple defendants for events that took place while Plaintiff was incarcerated at Southern Desert Correctional Center ("SDCC"). (ECF No. 1-1 at 1). Plaintiff sues Defendants Dr. H. Landsman, Director of Nursing Ben Gutierrez, Dr. Mathis, and Warden William Hutchings. (*Id.* at 2-3). Plaintiff brings two claims and seeks declaratory, injunctive, and monetary relief.[2] (*Id.* at 5, 10).

Plaintiff alleges the following: For the past 14 years, Plaintiff has had severe problems with his digestive system and has experienced dizziness, vomiting with yellow bile, bloating, severe bitter taste on his tongue, continuous discomfort and pain on the right upper side of his stomach and upper left side of his back, and occasional anal bleeding. (*Id.* at 3). Plaintiff has gone to medical "so many times over the years" to request a diagnosis, proper treatment, and surgery to correct this abnormal condition but prison officials have denied his requests and grievances. (*Id.* at 3-4). Dr. Landsman told Plaintiff that his "digestive problems [were] not life threatening" and that because Plaintiff could walk and be functional Plaintiff would not be a priority. (*Id.* at 4). Dr. Landsman

---

[1] Plaintiff's motion for records (ECF No. 3) appears to be a status check for this case. The Court denies the motion as moot in light of this order.

[2] Plaintiff's complaint is scanned out of order and lists claim 2 before claim 1. (*See* ECF No. 1-1 at 5, 7).

told Plaintiff that only life-threatening problems were a priority. (*Id.*) Prison officials repeatedly denied Plaintiff the correct diagnosis and treatment because his life was not in imminent danger. (*Id.*)

On several occasions, Dr. Landsman told Plaintiff that he was not going to have any solutions to Plaintiff's health problems because Plaintiff's life was not in imminent danger as demonstrated that Plaintiff was still alive. (*Id.* at 7). Dr. Landsman also told Plaintiff that he was not going to acquire any medical solutions because Plaintiff was "not a lifer" and had a release date. (*Id.*) Gutierrez knew about Plaintiff's medical condition for years but never gave Plaintiff a proper diagnosis or medical treatment. (*Id.*) Prison officials have refused to treat Plaintiff's medical conditions for 14 years. (*Id.*)

The lack of adequate medical treatment for 14 years has caused Plaintiff anxiety, depression, panic attacks, yellow and green bodily fluids each day, and nausea. (*Id.* at 5). On November 26, 2018, Plaintiff had an appointment with Dr. Mathis, the new psychiatrist. (*Id.*) Dr. Mathis told Plaintiff that he was a former pharmacist and, without asking about Plaintiff's mental status or determining whether Plaintiff's medications were working, Dr. Mathis reduced and eliminated some of Plaintiff's medications. (*Id.*) Plaintiff tried to explain that it took several years of treatment for prison officials to find the correct medication. (*Id.*) Dr. Mathis told Plaintiff that it was non-negotiable. (*Id.*) Dr. Mathis did this to several inmates and then prison administrators fired him. (*Id.*) Plaintiff suffers from anxiety and panic attacks. (*Id.* at 4).

Plaintiff alleges Eighth Amendment violations related to medical treatment (claim 1) and mental health treatment (claim 2). (*Id.* at 5, 7).

The Eighth Amendment prohibits the imposition of cruel and unusual punishment and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency.'" *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). A prison official violates the Eighth Amendment when he acts with "deliberate indifference" to the serious medical needs of an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "To establish an Eighth Amendment violation, a plaintiff must satisfy both an objective standard—that the

deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012).

To establish the first prong, "the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (internal quotations omitted). To satisfy the deliberate indifference prong, a plaintiff must show "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Id.* "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Id.* (internal quotations omitted). When a prisoner alleges that delay of medical treatment evinces deliberate indifference, the prisoner must show that the delay led to further injury. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) (holding that "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").

A mental health condition may constitute a serious medical need. *See Doty v. Cty. of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994).

The Court finds that Plaintiff states a colorable claim for deliberate indifference to serious medical needs for his long-lasting abdominal pains (claim 1). Based on the allegations, Plaintiff has had severe digestive issues for 14 years which causes him pain, nausea, dizziness, etc. However, because Plaintiff's undiagnosed medical condition does not appear to be life-threatening and Plaintiff has a release date, Dr. Landsman and Gutierrez have denied Plaintiff treatment for 14 years and let Plaintiff suffer in pain. Claim 1 will proceed against Defendants Dr. Landsman and Gutierrez.

The Court also finds that Plaintiff states a colorable claim for deliberate indifference to serious mental health needs (claim 2). Based on the allegations, Plaintiff has been suffering from mental health issues for 14 years. Based on the allegations, Dr. Mathis

1 interfered with Plaintiff's long standing mental health treatment and caused Plaintiff to
2 suffer from panic attacks. This claim will proceed against Dr. Mathis.

3 The Court dismisses the complaint without prejudice against Defendant Hutchings
4 because there are no allegations against him in the complaint.

### III. MOTION FOR APPOINTMENT OF COUNSEL

Plaintiff has filed a motion for appointment of counsel. (ECF No. 1-3). A litigant does not have a constitutional right to appointed counsel in 42 U.S.C. § 1983 civil rights claims. *Storseth v. Spellman*, 654 F.2d 1349, 1353 (9th Cir. 1981). Pursuant to 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel." However, the court will appoint counsel for indigent civil litigants only in "exceptional circumstances." *Palmer v. Valdez*, 560 F.3d 965, 970 (9th Cir. 2009) (§ 1983 action). "When determining whether 'exceptional circumstances' exist, a court must consider 'the likelihood of success on the merits as well as the ability of the petitioner to articulate his claims *pro se* in light of the complexity of the legal issues involved." *Id.* "Neither of these considerations is dispositive and instead must be viewed together." *Id.* In the instant case, the Court does not find exceptional circumstances that warrant the appointment of counsel. The Court denies the motion for appointment of counsel without prejudice.

### IV. CONCLUSION

It is ordered that a decision on the application to proceed *in forma pauperis* (ECF No. 1) is deferred.

It is further ordered that the Clerk of the Court file the complaint (ECF No. 1-1) and send Plaintiff a courtesy copy.

It is further ordered that claim 1, alleging Eighth Amendment deliberate indifference to serious medical needs, will proceed against Defendants Dr. Landsman and Gutierrez.

It is further ordered that claim 2, alleging Eighth Amendment deliberate indifference to serious mental health needs, will proceed against Defendant Dr. Mathis.

It is further ordered that Defendant Hutchings is dismissed from this case without

prejudice.

It is further ordered that the motion for appointment of counsel (ECF No. 1-3) is denied without prejudice.

It is further ordered that a motion for records request (ECF No. 3) is denied as moot.

It is further ordered that given the nature of the claim(s) that the Court has permitted to proceed, this action is stayed for 90 days to allow Plaintiff and Defendant(s) an opportunity to settle their dispute before the $350.00 filing fee is paid, an answer is filed, or the discovery process begins. During this 90-day stay period and until the Court lifts the stay, no other pleadings or papers may be filed in this case, and the parties will not engage in any discovery, nor are the parties required to respond to any paper filed in violation of the stay unless specifically ordered by the Court to do so. The Court will refer this case to the Court's Inmate Early Mediation Program, and the Court will enter a subsequent order. Regardless, on or before 90 days from the date this order is entered, the Office of the Attorney General will file the report form attached to this order regarding the results of the 90-day stay, even if a stipulation for dismissal is entered prior to the end of the 90-day stay. If the parties proceed with this action, the Court will then issue an order setting a date for Defendants to file an answer or other response. Following the filing of an answer, the Court will issue a scheduling order setting discovery and dispositive motion deadlines.

It is further ordered that "settlement" may or may not include payment of money damages. It also may or may not include an agreement to resolve Plaintiff's issues differently. A compromise agreement is one in which neither party is completely satisfied with the result, but both have given something up and both have obtained something in return.

It is further ordered that if the case does not settle, Plaintiff will be required to pay the full $350.00 filing fee. This fee cannot be waived, and the fee cannot be refunded once the Court enters an order granting Plaintiff's application to proceed *in forma*

*pauperis*. If Plaintiff is allowed to proceed *in forma pauperis,* the fee will be paid in installments from his prison trust account. 28 U.S.C. § 1915(b). If Plaintiff is not allowed to proceed *in forma pauperis*, the $350.00 will be due immediately.

It is further ordered that if any party seeks to have this case excluded from the inmate mediation program, that party will file a "motion to exclude case from mediation" on or before 21 days from the date of this order. The responding party will have 7 days to file a response. No reply will be filed. Thereafter, the Court will issue an order, set the matter for hearing, or both.

It is further ordered that the Clerk of the Court will electronically serve a copy of this order and a copy of Plaintiff's complaint (ECF No. 1-1) on the Office of the Attorney General of the State of Nevada, by adding the Attorney General of the State of Nevada to the docket sheet. This does not indicate acceptance of service.

It is further ordered that the Attorney General's Office will advise the Court within 21 days of the date of the entry of this order whether it will enter a limited notice of appearance on behalf of Defendants for the purpose of settlement. No defenses or objections, including lack of service, will be waived as a result of the filing of the limited notice of appearance.

DATED THIS  29  day of June 2021.

Gloria M. Navarro, Judge
United States District Court

- 8 -

# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| JORGE TRUJILLO,<br><br>         Plaintiff<br><br> v.<br><br>H. LANDSMAN et al.,<br><br>         Defendants | Case No. 2:20-cv-01643-GMN-VCF<br><br>REPORT OF ATTORNEY GENERAL<br>RE: RESULTS OF 90-DAY STAY |

**NOTE: ONLY THE OFFICE OF THE ATTORNEY GENERAL WILL FILE THIS FORM. THE INMATE PLAINTIFF WILL NOT FILE THIS FORM.**

  On _____ [*the date of the issuance of the screening order*], the Court issued its screening order stating that it had conducted its screening pursuant to 28 U.S.C. § 1915A, and that certain specified claims in this case would proceed. The Court ordered the Office of the Attorney General of the State of Nevada to file a report ninety (90) days after the date of the entry of the Court's screening order to indicate the status of the case at the end of the 90-day stay. By filing this form, the Office of the Attorney General hereby complies.

## REPORT FORM

[Identify which of the following two situations (identified in bold type) describes the case, and follow the instructions corresponding to the proper statement.]

**<u>Situation One: Mediated Case</u>: The case was assigned to mediation by a court-appointed mediator during the 90-day stay.** [If this statement is accurate, check **ONE** of the six statements below and fill in any additional information as required, then proceed to the signature block.]

 \_\_\_\_ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have reached a settlement (*even if paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in the case until a specified date upon which they will file a stipulation of dismissal.*)

 \_\_\_\_ A mediation session with a court-appointed mediator was held on _____ [*enter date*], and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

 \_\_\_\_ No mediation session with a court-appointed mediator was held during the 90-day stay, but the parties have nevertheless settled the case. (*If this box is checked, the parties are on notice that they must SEPARATELY file a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

____ No mediation session with a court-appointed mediator was held during the 90-day stay, but one is currently scheduled for **_____** [*enter date*].

____ No mediation session with a court-appointed mediator was held during the 90-day stay, and as of this date, no date certain has been scheduled for such a session.

____ None of the above five statements describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

**Situation Two: Informal Settlement Discussions Case**: **The case was NOT assigned to mediation with a court-appointed mediator during the 90-day stay; rather, the parties were encouraged to engage in informal settlement negotiations.** [If this statement is accurate, check **ONE** of the four statements below and fill in any additional information as required, then proceed to the signature block.]

____ The parties engaged in settlement discussions and as of this date, the parties have reached a settlement (*even if the paperwork to memorialize the settlement remains to be completed*). (*If this box is checked, the parties are on notice that they must SEPARATELY file either a contemporaneous stipulation of dismissal or a motion requesting that the Court continue the stay in this case until a specified date upon which they will file a stipulation of dismissal.*)

____ The parties engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____ The parties have not engaged in settlement discussions and as of this date, the parties have not reached a settlement. The Office of the Attorney General therefore informs the Court of its intent to proceed with this action.

____ None of the above three statements fully describes the status of this case. Contemporaneously with the filing of this report, the Office of the Attorney General of the State of Nevada is filing a separate document detailing the status of this case.

Submitted this _____ day of _____, _____ by:

Attorney Name: _____  _____
                       Print                                   Signature

Address: _____  Phone:

          _____

                                        Email: